FILED 12/29/2022 1:28 PM
David Trantham
Denton County District Clerk
By: Guadalupe Avelino, Deputy

22-10986-481

NO. _____

EXHIBIT
C-1

| | | |
|---|---|---|
| **RALPH M. PORTER, JR,** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **_____ JUDICIAL DISTRICT** |
| | § | |
| **THE MONEY SOURCE INC., and** | § | |
| **FIRST BANK, its/their successors** | § | |
| **and/or assigns,** | § | |
| | § | |
| **Defendants.** | § | **OF DENTON COUNTY, TEXAS** |

**PLAINTIFF'S ORIGINAL VERIFIED PETITION AND APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** RALPH M. PORTER, JR., hereinafter called Plaintiff, complaining of and about The Money Source Inc. and First Bank, its/their successors and/or assigns, as Defendants, and for his claims and causes of action set forth herein below, respectfully shows unto the Court the following.

**I.**

**DISCOVERY CONTROL PLAN LEVEL**

1.      Plaintiff intends that discovery be conducted under Discovery Level 2.

**II.**

**PARTIES AND SERVICE**

2.      Plaintiff, Ralph M. Porter, Jr. ("Plaintiff"), is an individual whose present address is 2173 Balcones Drive, Carrollton, Texas 75010. The last three digits of Plaintiff's driver's license number are XXX and the last three digits of Plaintiff's social security number are XXX.

3.      Defendant, The Money Source Inc. ("Money Source"), is a foreign for-profit

corporation doing business in the State of Texas as a mortgage servicer or lender and purports to be the current mortgage servicer of Plaintiff's mortgage loan made the subject of this suit, and may be served with process by serving its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas, 75201-3136. Service of process upon said Defendant as described above can be effectuated by personal delivery to its registered agent identified herein.

4.      Defendant, First Bank ("First Bank"), is a Texas State financial institution doing business in the State of Texas and purports to be the current mortgagee and holder and owner of Plaintiff's mortgage loan made the subject of this suit, and may be served with process by serving its registered agent, Brandon Anderson, 4110 Kell Blvd, Wichita Falls, Texas, 76309. Service of process upon said Defendant as described above can be effectuated by personal delivery to its registered agent identified herein.

### III.

### JURISDICTION AND VENUE

5.      The subject matter in controversy is within the jurisdictional limits of this court.

6.      Plaintiff seeks:

a.      monetary relief of less than $100,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees; and,

b.      injunctive relief in the form of a temporary restraining order and temporary injunction.

7.      This court has personal jurisdiction herein because each of the Defendants are Texas residents and/or routinely engage in or transact business in the State of Texas with sufficient minimum contacts.

8.      Venue is proper in Denton County in this cause pursuant to TEX. CIV. PRAC. &

REM. CODE §15.011 et seq., and because this action involves real property and the location of such real property is situated entirely in Denton County, Texas.

## IV.

### FACTUAL ALLEGATIONS

9.      On July 31, 2017, Plaintiff, and his wife Elizabeth M. Porter, purchased the real property and improvements commonly known as 2173 Balcones Drive, Carrollton, Texas 75010, and legally described to wit:

> **BEING LOT 1, IN BLOCK A, OF AUSTIN HILLS, AN ADDITION TO THE CITY OF CARROLLTON, DENTON COUNTY, TEXAS, ACCORDING TO THE AMENDING PLAT THEREOF RECORDED IN CC# 2016-260, PLST RECORDS OF DENTON**

which is the Plaintiff's homestead property. **At all relevant and material times hereto, Plaintiff was the fee simple owner of the subject Property**. (emphasis added). A true and correct copy of Special Warranty Deed With Vendor's Lien to evidence Plaintiff's fee simple title and ownership of the subject property and recorded as Instrument No. 94480 in the official real property records of the Denton County Clerk's office is attached hereto marked Exhibit "A" and incorporated herein by reference for all purposes.

10.     On the same day, July 31, 2017, Plaintiff and his wife applied for and obtained two (2) loans: a first lien from First Bank ("original lender") evidenced by promissory note in the amount of $424,100.00, which was secured by a Deed of Trust of even date to Donnie B. Park, Trustee, and a second lien from Certified Funding, LP evidenced by a promissory note in the amount of $95,090.00, and secured by a second lien Purchase Monet Deed of Trust of even date to William M. Woodall, Trustee. A true and correct copy of First Lien Deed of Trust recorded as Instrument No. 94481 in the official real property records of the Denton County Clerk's office is attached hereto marked Exhibit "B" and incorporated herein by reference for all purposes. The

First Lien Note and Deed of Trust are the only loan made the subject of this suit and are hereinafter collectively referred to as the "Plaintiff's Loan".

11.    On August 19, 2019, Plaintiff was laid off from his job of fifteen (15) years, and despite a drastic decease in his income, Plaintiff continued to make all required monthly loan payments until May 2020, when he and his family were negatively impacted by the Covid-19 pandemic

12.    On or about November 15, 2020, after struggling to find employment through the Covid-19 pandemic, Plaintiff was finally re-employed in his current job.

13.    On or about late 2020, Plaintiff reached out to Defendant First Bank and explained his financial situation and requested loss mitigation options, including a loan modification and/or forbearance due to the ongoing effects of the Covid-19 pandemic. Defendant Fist Bank's representative with whom Plaintiff spoke seemed to appreciate the magnitude of his financial situation and told Plaintiff that First Bank would offer him a loss mitigation option in the form of a Trial Period Loan Modification.

14.    Thereafter, on December 31, 2020, February 1, 2021, and March 1, 2021, Plaintiff paid all three (3) of the required Trial Period Modification payments to Defendant First Bank. Each trial period payment was in the amount of $2,057.16.

15.    Subsequently, on April 15, 2021, Defendant First Bank sent Plaintiff a proposed Loan Modification Agreement and package of documents top execute, which Plaintiff immediately signed and mailed all of the originals back to First Bank via Federal Express overnight courier, but Plaintiff did not keep any signed copies, only blank copies of what he had signed and returned. A true and correct copy of the Loan Modification Agreement and

documents executed by Plaintiff is attached hereto marked Exhibit "C" and incorporated herein by reference for all purposes.

16.     Thereafter, Plaintiff continued to make payments to Defendant First Bank under the Loan Modification. Plaintiff made the following payments in April 2021: April 7, 2021: $2,309.17; April 7, 2021: $2,309.17; and April 20, 2021: $2,057.16. All of these payments were received and accepted by Defendant First Bank and none of these payments has ever been refunded back to Plaintiff. Plaintiff never received any credit for these payments nor a loan modification.

17.     On May 24, 2021, Plaintiff paid an additional payment of $2,309.17 to Defendant First Bank. Again, this payment was received and accepted by Defendant First Bank.

18.     On or about June 2021, Plaintiff received a written notice from Defendant First Bank stating that the servicer, Defendant Money Source, had not received the signed loan modification on time and that he will need to re-apply for another modification. Plaintiff then once requested another loss mitigation application to complete and submit to Defendants First Bank and/or Money Source.

19.     After submitting his second loan modification application, Plaintiff proceeded to make additional payments under the first loan modification agreement (Exhibit "C") while awaiting review of his second application. Plaintiff paid the following payments: August 24, 2021: $1,008.24 and August 31, 2021: $2,309.17. Again, each of these payments was received and accepted by Defendants First Bank and/or Money Source and have never bene refunded to Plaintiff.

20.     On or about late October 2021, Defendants First Bank and/or Money Source advised Plaintiff that he had been approved for another Trial Period Loan Modification, and

Plaintiff then began to tender the trial period payments under this second modification. Plaintiff paid the following payments under the second trial period modification: November 1, 2021: $2,094.49; December 1, 2021: $2,094.49; and January 3, 2022: $2,094.49.

21.     However, after Plaintiff tendered payment of the three (3) trial period payments under the second modification, neither Defendant First Bank nor Defendant Money Source ever provided Plaintiff with another loan modification agreement to execute, even though the defendants received and accepted Plaintiff's tender of the three trial period payments.

22.     On or about December 2022, Plaintiff received a Notice of Trustee's Sale dated November 22, 2022, from the law firm of LOGS Legal Group, LLC, which stated that Plaintiff's homestead property had bene posted for foreclosure sale on January 3, 2022. A true and correct copy of the Notice of Trustee's Sale is attached hereto marked Exhibit "D" and incorporated herein  by reference for all purposes.

23.     Plaintiff once again contacted Defendant First Bank and explained his prior attempts to obtain a loan modification and all of the payments that he had tendered under both the first and second trial period modification plans that Defendants First Bank and/or Money Source had offered and accepted, and also requested an extension for the foreclosure sale date to allow him to complete and submit another loss mitigation request. Defendant Fist Bank representative with whom Plaintiff spoke told Plaintiff that First Bank would enter him into another loss mitigation application.

24.     On December 20, 2022, Plaintiff received an email from Defendant First Bank confirming its receipt of Plaintiff's submitted loss mitigation application.  A true and correct copy of the email is attached hereto marked Exhibit "E" and incorporated herein by reference for all purposes.

25.    Recently, Plaintiff then received a letter from Defendant Fist Bank dated December 22, 2022, stating that his most recent loss mitigation application had been denied due to the fact that it was received less than 37 days before the scheduled foreclosure sale. A true and correct copy of the December 22, 2022 letter form Defendant First Bank is attached hereto marked Exhibit "F" and incorporated herein by reference for all purposes.

26.    At no point since Plaintiff tendered all of the payments under both the first Trial Period Modification Plan and the second modification plan as described herein, *supra,* has either Defendant First Bank or Defendant Money Source ever provided Plaintiff with any Notice of Default and Opportunity to Cure notice, nor the required 30-day period to cure, as expressly set forth in paragraph 22 of the Deed of Trust and TEX. PROP. CODE §51.002(d), even though all of those payments were accepted by the defendants and have never been returned to Plaintiff.

**V.**

**FIRST CAUSE OF ACTION –
APPLICATION FOR TEMPORARY RESTRAINING ORDER AND
TEMPORARY INJUNCTION**

27.    Plaintiff hereby incorporates by reference and realleges all material allegations of fact set forth in Section IV above as if fully set forth herein.

28.    Pursuant to Rule 680 of the Texas Rules of Civil Procedure, Plaintiff hereby seeks immediate relief in the form of a Temporary Restraining Order wherein this Court orders, retrains and prohibits each of the Defendants, and/or any of its/their agents, employees, attorneys, trustees, substitute trustees, successors and/or assigns, from foreclosing or attempting to foreclose upon Plaintiff's homestead property for a period of at least fourteen (14) days until a temporary injunction hearing is held by this Court concerning whether Plaintiff has a probable right of recovery for his various claims and causes of action pleaded herein. There presently

exists an imminent threat of irreparable harm to Plaintiff in the form of Defendants First Bank and/or Money Source, and/or its/their agents, employees, attorneys, trustees, or substitute trustee's stated threat and intent to proceed with the foreclosure sale of Plaintiff's homestead property unless this Court immediately restrains such acts or conduct as requested herein.

29.    Moreover, after issuance of a temporary restraining order, and upon notice and a hearing as required by law, Plaintiff further seeks entry of a Temporary Injunction to maintain the status quo and prohibit all of the Defendants, and/or any of its/their agents, employees, attorneys, trustees, substitute trustees, successors and/or assigns, from foreclosing or attempting to foreclose Plaintiff from his homestead property until the merits of Plaintiff's various claims and causes of action as pleaded herein can be fairly and fully adjudicated.

## VI.

### SECOND CAUSE OF ACTION – BREACH OF CONTRACT AND FAILURE OF CONDITION PRECEDENT

30.    Plaintiff hereby incorporates by reference and realleges all material allegations of fact set forth in Section IV and V above as if fully set forth herein.

31.    The acts, conduct, or omissions of Defendants First Bank and/or Money Source as described herein, *supra*, also constitute a material breach of the Deed of Trust and a failure of condition precedent as to its/their acceleration of the Loan and posting of Plaintiff's homestead property for foreclosure sale, and which material breach is the proximate cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.

32.    Specifically, since Plaintiff made numerous payments during both his first and second trial period modifications, which payments were accepted by the defendants and were never returned or refunded to Plaintiff, the Defendants were required to provide Plaintiff with a

Notice of Default and Opportunity to Cure notice as expressly required under paragraph 22 of the Deed of Trust and TEX. PROP. CODE §51.002(d), and failed to provide him with said notice and at least 30 days to cure the default before accelerating the Loan and posting the property for foreclosure sale, and such failure to provide said notice constitutes a material breach of the Deed of Trust and a failure of condition precedent that must occur before the power of sale provision in the Deed of Trust can be exercised, and is a producing cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.

**VII.**

**THIRD CAUSE OF ACTION –**
**COMMON LAW FRAUD**

33.    Plaintiff hereby incorporates by reference and realleges all material allegations of fact set forth in Sections IV, V, and VI above as if fully set forth herein.

34.    The acts conduct and/or omissions of Defendants First Bank and/or Money Source, and/or its/their various employees, agents or attorneys as described herein, *supra*, also constitute common law fraud and the misrepresentation of material facts that Plaintiff relied upon to his detriment, and which are the proximate cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.

35.    Specifically, on or about late 2020 and early 2021, Defendant First Bank told Plaintiff that he had qualified for loan modification, and Plaintiff, in reliance upon those representations, tendered trial period payments and also executed and returned a loan modification agreement, which Defendants First Bank and/or Money Source claim it/they did not receive, but they certainly received and accepted all of the monthly payments that he had made under that agreement, and subsequently in late 2021 and early 2022, Defendant First Bank also told Plaintiff that he had qualified for a second trial period modification, which he again relied

upon those representations and tendered additional trial period payments, but was then never sent another modification agreement to execute, and subsequently the Defendants proceeded to accelerate Plaintiff's loan and post his homestead property for foreclosure sale, but wholly failed to ever provide any details of the amounts it/they claimed was due and owing after accepting all of his payments, and instead have accelerated the loan and posted his homestead property for foreclosure sale.

36.     As each of the acts, conduct and/or omissions of Defendants First Bank and/or Money Source as described herein that constitute common law fraud were committed intentionally, knowingly and/or with malice, or a conscious indifference as to the rights of Plaintiff, Plaintiff is entitled to and hereby seeks an award of exemplary damages in excess of the minimum jurisdictional limits of this Court.

**VIII.**

**FOURTH CAUSE OF ACTION -
VIOLATIONS OF RESPA AND REGULATION X
OF THE CODE OF FEDERAL REGULATIONS**

37.     Plaintiff hereby incorporates by reference and realleges all material allegations of fact set forth in Sections IV, V, VI, and VII above as if fully set forth herein.

38.     The acts, conduct and/or omissions of Defendant Money Source, which at all material times hereto was acting in its alleged capacity as "mortgage servicer" of Plaintiff's mortgage loan on behalf of Defendant First Bank, also constitute violations of RESPA and Regulation X of the Code of Federal Regulations established by the Consumer Financial Protection Bureau, 12 C.F.R. §1024.41 et seq., which became effective as of January 10, 2014, because Defendant Money Source committed violations of this statute and those statutory violations are a producing cause of the actual damages sustained and incurred by Plaintiff in

excess of the minimum jurisdictional limits of this Court.

39.    Pursuant the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §2605(f), Plaintiff has a private right of action providing for remedies for the claimed breaches of Regulation X, including actual damages, costs, statutory damages and attorney's fees.

40.    Plaintiff's mortgage loan is a "federally related mortgage loan" as that term is defined by 12 C.F.R. §1026.41(e)(4), and Defendant Money Source is subject to these regulations and does not qualify for the exception for a "small servicer" nor does Defendant First Bank qualify for an exception as a "qualified lender" as defined in 12 C.F.R. §617.700.

41.    Specifically, Defendant Money Source's acts, conduct, and/or omissions of failing, neglecting, or refusing to ever receive the executed Loan Modification Agreement (Exhibit "C") that Plaintiff had executed and mailed back to Defendant Money Source in April 2021, after Plaintiff had fully performed and tendered all of the trial period payments under that agreement, and wholly failed to provide Plaintiff with any written notice that his executed loan modification agreement had not been received; and further, after the Money Source had offered Plaintiff a second trial period modification offer in late 2021 and early 2022, and Plaintiff tendered performance under that second modification, Defendant Money Source wholly failed to provide him with a loan modification agreement to execute, even though the defendants had received and accepted his trial period payments under the second trial period plan as well, and instead engaged in "dual-tracking" and proceeded to accelerate the loan and post Plaintiff's homestead property for foreclosure sale each constitute violations of RESPA and Regulation X and are a producing cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.

42.    As each of the acts, conduct and/or omissions of Defendant Money Source as

described herein that constitute violations of RESPA and Regulation X and were committed intentionally, knowingly and/or with malice, or a conscious indifference as to the rights of Plaintiff, Plaintiff is entitled to and hereby seeks an award of exemplary damages in excess of the minimum jurisdictional limits of this Court.

**IX.**

**FIFTH CAUSE OF ACTION -**
**VIOLATIONS OF THE TEXAS DEBT COLLECTION ACT**

43.    Plaintiff hereby incorporates by reference and realleges all material allegations of fact set forth in Sections IV, V, VI, VII, and VIII above as if fully set forth herein.

44.    Further, the acts, conduct or omissions of Defendant Money Source as described herein, *supra*, which at all material times hereto was acting as a third-party debt collector attempting to collect the debt due another (Defendant First Bank), and which was in default at the time it began servicing the loan, of failing to provide Plaintiff with any Notice of Default and Opportunity to Cure notice or any amount to fully reinstate the loan or any true amount that was actually due and owing, even after Plaintiff had paid tens of thousands of dollars in trial period payments under both the first and second trial period modifications, also constitute the intentional and/or knowing misrepresentation of the character amount or extent of the debt to be collected, and which false representations of material fact Plaintiff relied upon to his detriment and which are a producing cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.

45.    Specifically, Defendant Money Source and/or its various officers, directors, agents, attorneys, or employees as described herein, *supra*, constitute violations of the following provisions of the TDCA: §392.301(a)(7)-*threatening that nonpayment of a consumer debt will result in the seizure, repossession, or sale of the person's property without proper court*

proceedings; and §392.301(a)(8)-*threatening to take an action prohibited by law;* and §392.304(a)(8) – *misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer's debt status in a judicial or governmental proceeding*; and §392.304(a)(19) – *using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer* and which violations are a producing cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.

46.    As each of the acts, conduct and/or omissions of Defendant Money Source that constitute violations of Texas Debt Collection Act were committed intentionally, knowingly and/or with malice, or a conscious indifference as to the rights of Plaintiff, Plaintiff is entitled to and hereby seeks an award of exemplary damages in excess of the minimum jurisdictional limits of this Court.

## X.

## EXEMPLARY DAMAGES

47.    Plaintiff hereby incorporates by reference and realleges all material allegations of fact set forth in Sections IV, V, VI, VII, VIII, and IX above as if fully set forth herein.

48.    Plaintiff would further show that the various acts, conduct and/or omissions of each of the Defendants complained of herein were committed knowingly, willfully, intentionally, and with actual awareness, and with the specific and pre-determined intention of enriching said Defendants at the expense of Plaintiff. In order to punish said Defendants for such unconscionable overreaching and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery from Defendants for exemplary damages as provided by Section 41.003(a)(1) of the Texas Civil Practice and Remedies Code.

## XI.

## **ATTORNEY'S FEES**

49.     Request is made for all costs and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiff herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just, as provided by: a) Section 37.001 et seq. of the Texas Civil Practices and Remedies Code; (b) the Texas Debt Collection Practices Act, TEX. FIN. CODE § 392.001 et seq., (c) RESPA and Regulation X of the Code of Federal Regulations, and (d) common law.

## XII.

## **JURY DEMAND**

50.     Plaintiff hereby requests that all issues of fact be tried before a jury.

## XIII.

## **PRAYER**

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Ralph M. Porter. Jr. respectfully prays that Defendants First Bank and Money Source, and/or each of its/their various agents, attorneys, or employees as described herein, *supra*, each be cited to appear and answer herein, and that Plaintiff be granted immediate relief in the form of a temporary restraining order and temporary injunction preventing the Defendants, and/or any of its/their respective agents, employees, attorneys, trustees, substitute trustees, successors and/or assigns from foreclosing upon Plaintiff's homestead property described herein until the merits of his various claims and causes of action pleaded herein may be fairly adjudicated; and that upon the final trial of this cause, judgment be entered in favor of Plaintiff, and against all Defendants, jointly and/or

severally, for Breach of Contract and Failure of Condition Precedent; Common Law Fraud; for

violations of RESPA and Regulation X of the Code of Federal Regulations; and for violations of

the Texas Debt Collection Act; and for an award of all economic and actual damages requested

herein in an amount in excess of the minimum jurisdictional limits Court, including exemplary

damages, together with pre-judgment and post-judgment interest at the maximum rate allowed

by law, and for an award of all attorney's fees and costs of court incurred, and for such other and

further relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

**J. GANNON HELSTOWSKI LAW FIRM**

**/s/ *John G. Helstowski***
John G. Helstowski
Texas Bar No. 24078653
5209 Heritage Avenue, Suite 510
Colleyville, Texas 76034
Telephone: (817) 382-3125
Facsimile: (817) 382-1799
Email: jgh@jghfirm.com
Attorney for Plaintiff Ralph M. Porter, Jr.

## VERIFICATION

STATE OF TEXAS        §
                            §

COUNTY OF Denton        §

"My name is Ralph Michael Porter, Jr I am the Plaintiff named in the attached and foregoing PLAINTIFF'S ORIGINAL VERIFIED PETITION. I am over the age of 21 years and have never been convicted of a felony or other crime involving moral turpitude. I have personal knowledge of all of the facts set forth in the PLAINTIFF'S ORIGINAL PETITION and hereby state that every factual statement set forth therein is true and correct.

FURTHER AFFIANT SAYETH NOT." EXECUTED

this 28th day of December 2022.

_____       Ralph Michael Porter. Jr
Signature                                Print

**SUBSCRIBED AND SWORN BEFORE ME** on this 28 day of December, 2022, by Client, to certify which witness my hand and official seal.

_____
Notary Public in and for the State of Texas

Constance Shenk

**Printed Name of Notary Public**

My Commission Expires on: 5-16-2023

(seal)

D 1-3

1018- 228506 RTT

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## Special Warranty Deed with Vendor's Lien

AFTER RECORDING RETURN TO:
Ralph M Porter, JR
2173 Balcones Drive
Carrollton, TX 75010

Date:     Executed on the date set forth in the acknowledgement herein, but to be effective the Thirty-first day of July, 2017.

Grantor:          American Legend Homes, LLC, a Texas limited liability company

Grantor's Mailing          2540 King Arthur Blvd, Suite 200
Address:                        Lewisville, TX 75056

Grantee:     Ralph M Porter, JR

Grantee's Mailing Address:          2173 Balcones Drive
                                                   Carrollton, TX 75010

Consideration:

Ten Dollars ($10.00) and other good and valuable consideration paid to Grantor by Grantee and a note of even date in the principal amount of Four Hundred Twenty Four Thousand One Hundred and 00/100 Dollars - ($424,100.00 ) made by Grantee payable to the order of First Bank , "Lender" herein, as consideration for the amount paid to Grantor. The note is secured by a vendor's lien retained in favor of Lender in this deed and by a deed of trust of even date from Grantee to Donnie B. Park, Trustee: AND THE FURTHER CONSIDERATION OF THE EXECUTION AND DELIVERY by the Grantee(s) herein of that one certain Note of even date herewith in the original principal sum of Ninety Five Thousand Ninety and 00/100 Dollars - ($95,090.00 ) payable to the order of Certified Funding, L.P., due in accordance with the terms and at the interest rate as in said Note provided; said Note being secured by the Vendor's Lien herein retained and additionally secured by a Deed of Trust of even date herewith to William M. Woodall, Trustee, said Note and liens securing its payment being SUBORDINATE AND INFERIOR to the $424,100.00 Note hereinabove described and the liens securing its payment.

Special Warranty Deed with Vendor's Lien-1st & 2nd Lien

          1          ©PearsonPatterson, LLP.-Arlington, Texas 2016
                                                                          0941020817 [Doc Id 3546 M06232014]



EXHIBIT
A
tabbies

Property (including any improvements):

Being Lot 1, in Block A, of AUSTIN HILLS, an Addition to the City of Carrollton, Denton County, Texas, according to the Amending Plat thereof recorded in cc# 2016-260, Plat Records of Denton County, Texas.

The above described property also includes any and all of Grantor's right, title, and/or interest in any and all system memberships and/or ownership certificates in any non-municipal water and/or sewer systems now or in the future serving said property.

Reservations from and Exceptions to Conveyance and Warranty:

This conveyance is given and accepted subject to any and all restrictions, reservations, covenants, conditions, rights of way, easements, municipal or other governmental zoning laws, regulations and ordinances, if any, affecting the herein described property.

Grantee herein assumes the taxes for the current year.

Grantor, for the consideration and subject to the reservations from and exceptions to conveyance and warranty, grants, sells, and conveys to Grantee the property, together with all and singular the rights and appurtenances thereto in any wise belonging, to have and hold it to Grantee, Grantee's heirs, executors, administrators, successors, or assigns forever. Grantor binds Grantor and Grantor's heirs, executors, administrators, and successors to warrant and forever defend all and singular the property to Grantee and Grantee's heirs, executors, administrators, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the reservations from and exceptions to conveyance and warranty when the claim is by, through or under Grantor but not otherwise. The vendor's lien (to the extent of the consideration paid by Grantee to Grantor) against and superior title to the property are retained until each note described is fully paid according to its terms, at which time this deed shall become absolute. The vendor's lien and superior title retained in this deed are transferred to Lender, without recourse on Grantor. When the context requires, singular nouns and pronouns include the plural. When executed by a corporation the words "heirs and assigns" shall be construed to mean "Successors and assigns".

American Legend Homes, LLC, a Texas limited
liability company

By: _____

2

©PeirsonPatterson, LLP.-Arlington, Texas  2016
1205310717 [Doc Id 3546 M06232014]

STATE OF TEXAS
COUNTY OF _Denton_

The foregoing instrument was acknowledged before me this 31 day of _July_, 20 1 _7_ by _Kevin Con-Reault_ _____ of American Legend Homes, LLC, a Texas limited liability company, on behalf of said entity.

_Pauline Barientos_
Notary Public
Printed Name: _Pauline Barrientos_
My commission expires: _7/7/19_

PAULINE BARRIENTES
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 07-07-2019
NOTARY ID 130285877

Special Warranty Deed with Vendor's Lien-1st & 2nd Lien



3

©PeirsonPatterson, LLP.-Arlington, Texas 2016
1205310717 [Doc Id 3546 M062320141]

**Denton County**
**Juli Luke**
County Clerk

---

**Instrument Number:** 94480

ERecordings-RP

WARRANTY DEED

Recorded On: August 02, 2017 01:53 PM                    Number of Pages: 4

---

**" Examined and Charged as Follows: "**

Total Recording: $38.00

---

*********** **THIS PAGE IS PART OF THE INSTRUMENT** ***********
Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                                    **Record and Return To:**

Document Number:    94480                                eRx
Receipt Number:     20170802000515
Recorded Date/Time: August 02, 2017 01:53 PM
User:               Samantha C
Station:            Station 21

---



**STATE OF TEXAS**
**COUNTY OF DENTON**

**I hereby certify that this Instrument was FILED In the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Records of Denton County, Texas.**

Juli Luke
County Clerk
Denton County, TX

𝒟 2

1018–228506 RTT (CA)

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

# DEED OF TRUST

Loan # 1617060060
MIN #100107016170600601

After recording, please return to:
First Bank
1400 Preston Road, Suite #290
Plano, TX 75093
First Bank

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)**  "Security Instrument" means this document, which is dated July 31, 2017, together with all Riders to this document.

**(B)**  "Borrower" is **Ralph M Porter, JR and wife, Elizabeth M Porter, with her joining herein to perfect the security interest but not to otherwise be liable.** Borrower is the grantor under this Security Instrument.

**(C)**  "Lender" is **First Bank** . Lender is a state bank organized and existing under the laws of Texas. Lender's address is **2801 Midwestern Parkway, Suite #200, Wichita Falls, TX 76308.** Lender includes any holder of the Note who is entitled to receive payments under the Note.

**(D)**  "Trustee" is **Donnie B. Park** . Trustee's address is **2801 Midwestern Parkway, Suite #200, Wichita Falls, TX 76308.**

**(E)**  "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is

Texas Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

MERS Modified Form 3044 01/01 (Rev. 07/29/13)
14301TX 08/00
©2016, The Compliance Source, Inc.
1205310717 [Doc Id 6741 M04012015]

1

**EXHIBIT**
**B**
tabbies®

acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F)** "**Note**" means the promissory note signed by Borrower and dated July 31, 2017. The Note states that Borrower owes Lender **Four Hundred Twenty Four Thousand One Hundred and 00/100 Dollars (U.S. $424,100.00)** plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **August 1, 2047.**

**(G)** "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

**(H)** "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I)** "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ 1-4 Family Rider | ☐ Rate Improvement Rider | ☐ Graduated Payment Rider |
| ☐ VA Loan Rider | ☐ Manufactured Home Rider | ☐ Other(s): |

**(J)** "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K)** "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L)** "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)** "**Escrow Items**" means those items that are described in Section 3.

**(N)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O)** "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

---

MERS Modified Form 3044 01/01 (Rev. 07/29/13)
14301TX 08/00
©2016, The Compliance Source, Inc.
1205310717 [Doc Id 6741 M04012015]

**(P)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County [Type of Recording Jurisdiction] of **Denton** [Name of Recording Jurisdiction]:

**Being Lot 1, in Block A, of AUSTIN HILLS, an Addition to the City of Carrollton, Denton County, Texas, according to the Amending Plat thereof recorded in cc# 2016-250, Plat Records of Denton County, Texas.**

which currently has the address of

**2173 Balcones Drive, Carrollton, Texas 75010**
**["Property Address"]**

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests , including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section

3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation

Texas Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    MERS Modified Form 3044 01/01 (Rev. 07/29/13)
14301TX 08/00

4    ©2016, The Compliance Source, Inc.
1205310717 [Doc Id 6741 M04012015]

to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.     **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.     **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier

providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property



as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the

Texas Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT
MERS Modified Form 3044 01/01 (Rev. 07/29/13)
14301TX 08/00
©2016, The Compliance Source, Inc.
1205310717 [Doc Id 6741 M04012015]



7

premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a)    Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)    Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.    Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

Texas Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

MERS Modified Form 3044 01/01 (Rev. 07/29/13)
14301TX 08/00
©2016, The Compliance Source, Inc.



8

1205310717 [Doc Id 6741 M04012015]

Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12.    **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13.    **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's

Texas Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM    MERS Modified Form 3044 01/01 (Rev. 07/29/13)
INSTRUMENT                                                                    14301TX 08/00



9

©2016, The Compliance Source, Inc.

1205310717 [Doc Id 6741 M04012015]

rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14.    **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15.    **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16.    **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17.    **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18.    **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not

a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following

---

Texas Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM        MERS Modified Form 3044 01/01 (Rev. 07/29/13)
INSTRUMENT                                                                                14301TX 08/00
                                        11                    ©2016, The Compliance Source, Inc.
                                                                            1205310717 [Doc Id 6741 M04012015]

substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22.    **Acceleration; Remedies.**  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public venue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale

in the following order:  (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale.  If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23.      **Release.**  Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law.  Borrower shall pay any recordation costs.  Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24.      **Substitute Trustee; Trustee Liability.**  All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together.  Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing.  Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct.  Trustee shall not be liable for any act or omission unless such act or omission is willful.

25.      **Subrogation.**  Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property.  Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

26.      **Partial Invalidity.**  In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

27.      **Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Property; Acknowledgment of Cash Advanced Against Non-Homestead Property.  Check box as applicable:**

[X]      **Purchase Money.**
The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property.  The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

[ ]      **Owelty of Partition.**
The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

[ ]      **Renewal and Extension of Liens Against Property.**
The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference.  Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal

and extension of the indebtedness.

☐    **Acknowledgment of Cash Advanced Against Non-Homestead Property.**
The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

**28.    Loan Not a Home Equity Loan. The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____  7/31/17         _____  7/31/17
Signature                  Date            Signature                   Date
**Ralph M Porter, JR**                     **Elizabeth M Porter**

                                                              *[Sign Originals Only]*

STATE OF TEXAS
COUNTY OF _Denton_

The foregoing instrument was acknowledged before me this _31st_ day of _July_, 20_17_ by Ralph M Porter, JR and Elizabeth M Porter.

_____
Notary Public
Printed Name:_____
My commission expires: _1-9-2019_

ELIZABETH A. HINES
Notary Public
State of Texas
ID # 124435414
Comm. Expires 01/09/19

MLO Organization: First Bank
ID: 583439
MLO Individual: Andy Butler
ID: 803225

# Planned Unit Development Rider

LO Company NMLS ID 583439
LO NMLS ID 803225
Loan # 1617060060

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **Thirty-first** day of **July, 2017**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **First Bank**  (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**2173 Balcones Drive, Carrollton, Texas  75010**
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in **the Declaration of Covenants, Conditions and Restrictions** (the "Declaration").
The Property is a part of a planned unit development known as
**Austin Hills**
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.**  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.**    **PUD Obligations.**  Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents.  The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association.  Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B.**    **Property Insurance.**  So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage", and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then:

(i)  Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii)  Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

Multistate PUD Rider - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT



1

Form 3150 01/01
14501MU 08/00
©2016, The Compliance Source, Inc.
1205310717 [Doc Id 6749 M03032015]

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C.    Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D.    Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E.    Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F.    Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

Signature _____  Date 7/31/17
**Ralph M Porter, JR**

Signature _____  Date 7/31/17
**Elizabeth M Porter**

*[Sign Originals Only]*

Multistate PUD Rider - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                     Form 3150 01/01
                                                                                         14501MU 08/00
                                                         2                              ©2016, The Compliance Source, Inc.
                                                                                   1205310717 [Doc Id 6749 M03032015]

**Denton County**
**Juli Luke**
County Clerk

---

**Instrument Number:  94481**

ERecordings-RP

DEED OF TRUST

Recorded On: August 02, 2017 01:53 PM                    Number of Pages: 17

---

**" Examined and Charged as Follows: "**

Total Recording: $90.00

---

**\*\*\*\*\*\*\*\*\*\*\* THIS PAGE IS PART OF THE INSTRUMENT \*\*\*\*\*\*\*\*\*\*\***
Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                                   **Record and Return To:**
Document Number:      94481                              eRx
Receipt Number:       20170802000515
Recorded Date/Time:   August 02, 2017 01:53 PM
User:                 Samantha C
Station:              Station 21

---



**STATE OF TEXAS**
**COUNTY OF DENTON**
I hereby certify that this Instrument was FILED In the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Records of Denton County, Texas.

Juli Luke
County Clerk
Denton County, TX

# 1ST First Bank

April 15th, 2021

Ralph M Porter, Jr and Elizabeth M Porter
2173 BALCONES DR
CARROLLTON, Texas 75010

**Loan #:** 0832004162
**Property Address:** 2173 BALCONES DR, CARROLLTON, Texas 75010

Dear Ralph M Porter, Jr and Elizabeth M Porter:

**Congratulations! You are eligible for a Loan Modification, which will permanently change the terms of your mortgage!** If you comply with the terms of the required Trial Period Plan, we will modify your mortgage loan and may waive all prior late charges that remain unpaid.

The enclosed modification agreement ("Loan Modification Agreement") reflects the proposed terms of your modified mortgage loan.

**To Accept This Offer:**

☑ **Sign and return** both copies of the Loan Modification Agreement back to us in the enclosed, pre-paid envelope within 14 days of receipt of this package. If you do not send both signed copies of the Loan Modification Agreement by the above date, you must contact us if you still wish to be considered for a modification.

- If the Loan Modification Agreement has notary provisions at the end, you must sign both copies before a notary public and return the notarized documents to us.
- We encourage you to make a copy of all documents for your records.

☑ **Make all remaining Trial Period Plan Payments** on or before the dates they are due. If the trial period payments are made after their due dates or in amounts different from the trial period payment amount required, you may not be able to be modified.

To better understand the proposed terms of your modified mortgage loan, please read the attached summary of your modified mortgage and the Loan Modification Agreement.

Don't delay—take advantage of this great offer within fourteen (14) business days.

Sincerely,

First Bank
Enclosure



THIS IS AN ATTEMPT TO COLLECT A DEBT BY A DEBT COLLECTOR AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.*

*PLEASE NOTE THIS STATEMENT DOES NOT APPLY TO YOU IF YOU FILED A BANKRUPTCY PETITION AND RECEIVED A DISCHARGE OF YOUR PERSONAL LIABILITY FOR THE OBLIGATION IDENTIFIED IN THIS LETTER OR THERE IS AN AUTOMATIC STAY CURRENTLY IN EFFECT. IN EITHER CASE WE MAY NOT AND DO NOT INTEND TO PURSUE COLLECTION OF THE OBLIGATION FROM YOU PERSONALLY AND THIS LETTER IS NOT INTENDED AS A DEMAND FROM YOU PERSONALLY. UNLESS THE BANKRUPTCY COURT HAS ORDERED OTHERWISE, HOWEVER, PLEASE ALSO NOTE THAT DESPITE ANY SUCH BANKRUPTCY, FIRST BANK RETAINS A SECURITY INTEREST IN THE PROPERTY IDENTIFIED IN THIS LETTER, WHICH FIRST BANK MAY PURSUE AND ENFORCE.

Esta carta contiene información importante sobre su cuenta y podria requerir su atención. Si tiene alguna pregunta y desea hablar en Español con un empleado, sírvase comunicarse con nosotros al 1-888-648-3124 durante nuestras horas de oficina normales.

*Attachments: Summary of Your Modified Mortgage, Two copies of the Modification Agreement*

**SUMMARY** — Here is a summary of your modified mortgage.

**NEW PRINCIPAL BALANCE**. Any past due amounts as of the end of the trial period, including unpaid interest, real estate taxes, insurance premiums, and certain assessments paid on your behalf to a third party, will be added to your mortgage loan balance. In addition, your mortgage insurance premium may increase as a result of the higher mortgage loan balance. **If you fulfill the terms of the trial period including, but not limited to, making any remaining trial period payments, we will waive ALL late charges that have accrued and remain unpaid at the end of the trial period.**

**INTEREST RATE**. The interest rate on your modified loan will be adjusted as noted in the attached Modification Agreement

**TERM EXTENSION.** To reduce your mortgage payment, we will extend the term of your mortgage. This means we will spread your payments over a longer period.

**ESCROW ACCOUNT.** The terms of your Modification Agreement require the servicer to set aside a portion of your new monthly payment in an escrow account for payment of your property taxes, insurance premiums and other required fees. Any prior waiver of escrows by your lender is no longer in effect. First Bank will draw on this account to pay your real estate taxes and insurance premiums as they come due. Please note that your escrow payment amount will adjust if your taxes, insurance premiums and/or assessment amounts change, so the amount of your monthly payment that First Bank must place in escrow will also adjust as permitted by law. This means that your monthly payment may change. Your initial monthly escrow payment will be $0.00. This amount is not included in the loan payment noted in the enclosed Modification Agreement; you must remit this amount separately.

**PAYMENT TERMS**. The enclosed Modification Agreement includes a payment schedule showing your payment plan for the life of your modified loan after the trial period.

**FEES**. There are no fees or other charges for this modification.

**REPRESENTATIONS**. Please read the enclosed Modification Agreement carefully and make sure that you understand it and that the statements set forth in the "My Representations" section are true and accurate. If you have any questions, please contact us at **866-204-1023.**



**First Bank**

500 S. Broad St., Suite 100A, Meriden, CT 06450
Phone: 866-204-1023 Fax: 888-214-4255

## Varying ACH Recurring Payment Authorization Form

Please mail the original completed authorization form to the address listed above. Questions? Please contact Customer Care at 866-204-1023.

### How do recurring payments work?

You authorize regularly scheduled charges to your checking or savings account. The authorized account will be charged the amount indicated on your mortgage loan Note plus any taxes and insurance incurred during the billing period. You authorize us to change the amount of your payment or reconcile as needed if there is an increase or decrease in the payment amount due to changes in the interest rate, escrow, or for any other permissible reason. The charge will be reflected on your monthly billing statement and will appear on your bank statement as an "ACH Debit." You agree that no prior notification will be provided unless the date or amount changes, in which case you will receive notice from us at least 10 days prior to the payment being collected.

        **Instructions:**
- Complete, sign and return the original form below. **Please note:** you do not need to put your monthly payment amount on this form.
- Attach a voided check for ACH payments from a checking account or a savings deposit slip for ACH payments from a savings account.

### What else do I need to know?

Requests for changes or cancellations must be made at least 5 business days before the scheduled payment date. Automatic payments may be cancelled if they are returned, if loan falls into a delinquent status, or if you, a co-borrower, or anyone listed on the title of the property that secures the loan files for bankruptcy. If this occurs, contact us for instructions for making payments on your loan. We may change the terms regarding automatic payments at any time and will provide any required notice to you in writing.

### What do I need to do?

For payments from a checking account, please attach a voided check. For payments from a savings account, please provide a deposit slip showing the account number and bank phone number.

The ACH Recurring Payment Authorization Form must reach our office at least 10 days prior to the loan due date. Authorizations received less than 10 days prior to the loan due date will not be set-up until the next payment due date. **You will receive a confirmation letter once your automatic payment has been set-up. It can take up to 30 days for ACH withdrawals to start. If a payment is due during this 30-day period, payment will need to be made by alternative means such as mailing a check, paying online, or over the phone.** It is important that you continue to send your monthly mortgage payment until the confirmation is received.

Please complete the information: Loan #_____Name on mortgage acct _____
Starting on,_____, I_____authorize us to charge the bank account indicated below on
      (Date)        (full name)

| 1st | 2nd | 3rd | 4th | 5th | 6th | 7th | 8th | 9th | 10th | 11th | 12th | 13th | 14th | 15th |
|-----|-----|-----|-----|-----|-----|-----|-----|-----|------|------|------|------|------|------|

the_____of each month for payment of the mortgage loan. Select a date from 1st-15th (numeric day)

| Account Type: | Checking | Savings |
|---|---|---|
| Name on Acct. | | |
| Bank Name | ☐ | ☐ |
| Account Number | | |
| Bank Routing # | | |
| Bank City/State | | |

**Routing Number   Account Number**
FOR
⦅222222222⦆⦇000111555⦈ 1027

I approve an **ADDITIONAL PRINCIPAL** amount of $_____to be withdrawn each month
                   (enter $0 if no additional amount is requested)

BANK ACCOUNT HOLDER'S SIGNATURE_____      DATE _____

By signing above, you authorize us to electronically withdraw monthly payments plus any additional principal you authorize from the bank account provided on the date specified, or on the next business day if that date falls on a non-banking day. You understand that this authorization will remain in effect until you request a stop payment by notifying us, orally or in writing, at least 5 business days before the scheduled payment date, using the contact phone number or address listed above. We may require you to submit written confirmation of the stop payment order within 14 days of any oral notification and will notify you if that is the case at the time of oral cancellation. Oral stop payment orders cease to be binding after 14 days if required written confirmation is not provided. You understand that because this is an electronic transaction, the funds may be withdrawn from your account on or after the noted transaction dates. If an ACH transaction is rejected for Non-Sufficient Funds (NSF), we may, at our discretion, attempt to process the charge again within 30 days. You agree to an additional charge for each attempt returned NSF, which will be initiated as a separate transaction from the authorized recurring payment. You further authorize us to initiate electronic transactions that may be necessary to reconcile errors related to electronic transactions. By signing above, you acknowledge you have read this agreement and agree to its terms and will keep a copy for your records.

Loan No.:  0832004162

# Borrower and Notary Checklist

Please carry this sheet with you when you have your documents notarized.  This checklist is being provided to ensure that your loss mitigation documents are correctly executed.  If any of the following steps are not completed, or are completed incorrectly, the documents will be returned to you for correction and/or completion.

- Borrower(s) must sign their name(s) exactly as the printed line below the signature line.
- County, State and date information completed (if applicable) on Borrower's Acknowledgment for each set of documents.
- Notarization date written in by Notary Public when notarizing Borrower's Acknowledgment for each set of documents.
- Notary Public's signature and title written in by Notary Public when notarizing Borrower's Acknowledgment for each set of documents
- Notary Public's stamp and/or seal placed on Borrower's Acknowledgment when notarizing each set of documents.
- Commission Expiration Date of Notary Public written in on Borrower's Acknowledgment for each set of documents, if required.
- **\*\*DO NOT HAVE DOCUMENTS NOTARIZED BY A FAMILY MEMBER OR A FOREIGN NOTARY\*\***

- **Witness Signatures**

Certain states require witness(es) to your signature.  If witness signatures are required on your loan documents, please verify that each witness has signed and printed/typed their name under the signature as indicated.   **\*\*BORROWERS CANNOT WITNESS THEIR OWN SIGNATURES. \*\***

**\*\*WITNESS SIGNATURES MUST BE FROM NON-RELATED, DISINTERESTED THIRD PARTIES.\*\***

**NOTE**:  The Lender's Acknowledgment portion of the **loan documents** will be completed by the Lender and **SHOULD NOT** be notarized by your notary public.

**After Recording Mail To:**
RUTH RUHL, P.C.
Attn: Recording Department
12700 Park Central Drive, Suite 850
Dallas, Texas 75251

_____[Space Above This Line For Recording Data]_____

# LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

Loan No.: 0832004162
Investor Loan No.: 4013404483
MERS No.: 100107016170600601                                    MERS Phone: 1-888-679-6377

This Loan Modification Agreement ("Agreement") made this    15th    day of April, 2021    , between Ralph M Porter, Jr, and wife, Elizabeth M Porter, with her joining herein to perfect the security interest but not to otherwise be liable

                                                                                    ("Borrower")

and   First Bank by The Money Source Inc., as Agent under limited POA

                                                                                    ("Lender"),

and Mortgage Electronic Registration Systems, Inc.                    ("MERS") ("Beneficiary"),
amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated
July 31st, 2017              , granted or assigned to Mortgage Electronic Registration Systems, Inc. as beneficiary of record (solely as nominee for Lender and Lender's successors and assigns), P.O. Box 2026, Flint, Michigan 48501-2026 and recorded on August 2nd, 2017    , in Mortgage Book    N/A    , Page    N/A    , Instrument No. 94481              , Official Records of DENTON              County, Texas    , and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in said Security Instrument and defined therein as the "Property," located at 2173 BALCONES DR, CARROLLTON, Texas 75010                                    ,

---

**TEXAS LOAN MODIFICATION AGREEMENT**                                    **Page 1 of 7**
**(FNMA Modified Form 3179 1/01 (rev. 06/18))**

Loan No.: 0832004162

the property described being set forth as follows:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

 

 

 

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.      As of June 1st, 2021     , the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $ 422,797.55   , consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.      Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 5.125  %, from May 1st, 2021   . Borrower promises to make monthly payments of principal and interest of U.S. $ 2,073.84  , beginning on the 1st  day of June, 2021  , and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 5.125  % will remain in effect until principal and interest are paid in full. If on May 1st, 2061  , (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.      The lien and security interest secured by this Agreement is a "written renewal and extension" as provided by the applicable laws of this state. It is the intention of the parties that all liens and security interests described in the Security Instrument are hereby renewed and extended until the Indebtedness evidenced by the Note, as renewed, modified, and extended hereby, has been fully paid. Lender and Borrower acknowledge and agree that such extension, renewal, amendment, modification, or rearrangement shall in no manner affect or impair the Note or the liens and security interests securing same, the purpose of this Agreement being simply to extend, modify, amend or rearrange the time and the manner of payment of the Note and the indebtedness evidenced thereby, and to carry forward all liens and security interests securing the Note (including if applicable any and all vendor's liens securing the Note), which are expressly acknowledged by Borrower to be valid and subsisting, and in full force and effect so as to fully secure the payment of the Note. Borrower hereby expressly waives the benefit of any and all statutes of limitation which might otherwise inure to Borrower's benefit, or be in any way applicable to Borrower's obligations under the terms of any and all instruments described herein.

4.      If all or any part of the Property or any interest in the Property is sold or transferred, (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

---

**TEXAS LOAN MODIFICATION AGREEMENT**
(FNMA Modified Form 3179 1/01 (rev. 06/18))

Loan No.: 0832004162

       If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

    5.     Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    (a)     all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

    (b)     all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

    6.     Borrower understands and agrees that:

    (a)     All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    (b)     All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

    (c)     Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

    (d)     All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

    (e)     Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

    (f)     Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

      **Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.**

    By checking this box, Borrower also consents to being contacted by text messaging☉.

Loan No.: 0832004162

    (g)      "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. **MERS is the Beneficiary of record under the Security Instrument and this Agreement.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

    7.      No Oral Agreements: **THE WRITTEN LOAN AGREEMENTS REPRESENT THE FINAL AGREEMENTS BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

    8.      If applicable, by this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligations to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

    9.      Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph.

    Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

    Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

    The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, **Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree** in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

Loan No.: 0832004162

     If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

     Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund Borrower any Funds held by Lender.

| | |
|---|---|
| _____ | _____(Seal) |
| Date | Ralph M Porter, Jr      –Borrower |

| | |
|---|---|
| _____ | _____(Seal) |
| Date | Elizabeth M Porter, signing solely to  –Borrower |
| | acknowledge this Agreement, but not to incur |
| | any personal liability for the debt |

| | |
|---|---|
| _____ | _____(Seal) |
| Date | –Borrower |

| | |
|---|---|
| _____ | _____(Seal) |
| Date | –Borrower |

## BORROWER ACKNOWLEDGMENT

State of   _____   §
                              §
County of  _____   §

     Before me, a Notary Public, on this day personally appeared Ralph M Porter, Jr and Elizabeth M Porter

known to me or proved to me on the oath of _____or through _____, *[description of identity card or other document]* to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.
     Given under my hand and seal of office this _____day of _____A.D._____.

(Seal)

                           _____
                                      **Notary Signature**
                           Printed/Typed Name:_____

                           Notary Public, State of_____
                           My Commission Expires:_____

Loan No.: 0832004162

_____
                                        -Date

<u>The Money Source Inc., as Agent under</u>
limited POA for First Bank            -Lender

By: _____

Printed/Typed Name:_____

Its: <u>Vice President</u>_____

# LENDER ACKNOWLEDGMENT

State of        Arizona                    §
                                           §
County of    Maricopa                      §

    This instrument was acknowledged before me on _____ , _____ *[date]*, by
_____ *[name of officer]*, <u>Vice President</u>_____
*[title of officer]* of  The Money Source Inc., as Agent under limited POA for First Bank
                                                            , on behalf of said entity.

(Seal)

                                                 _____
                                                      Notary Signature
                   Printed/Typed Name:_____
                   Notary Public, State of_____
                   My Commission Expires:_____

Loan No.: 0832004162

_____
                                    -Date

Mortgage Electronic Registration Systems, Inc.
as nominee for Lender, its successors and        -MERS
assigns

By: _____

Printed/Typed Name:_____

Its: Assistant Secretary _____

# MERS ACKNOWLEDGMENT

State of     Arizona              §
                                  §
County of    Maricopa             §

     This instrument was acknowledged before me on _____ , _____ *[date]*, by
by _____ , Assistant Secretary of Mortgage Electronic Registration Systems,
Inc., as nominee for Lender, its successors and assigns, on behalf of said entity.

(Seal)
                              _____
                                                          Notary Signature
                              Printed/Typed Name:_____
                              Notary Public, State of_____
                              My Commission Expires:_____

**ACKNOWLEDGMENT (TEXAS)**                                          **Page 7 of 7**

Loan No.: 0832004162

# CORRECTION AGREEMENT

**Borrower(s):** Ralph M Porter, Jr and Elizabeth M Porter      **Property:** 2173 BALCONES DR, CARROLLTON, Texas 75010

Words used in this Agreement are defined below. Words in the singular mean and include the plural and vice versa.

**"Borrower"** is Ralph M Porter, Jr and Elizabeth M Porter.

**"Lender"** is First Bank by The Money Source Inc., as Agent under limited POA
, and its successors or assigns.
**"Loan"** means the debt evidenced by the Note and all sums due under the Security Instrument.
**"Note"** means the promissory note(s) signed by Borrower in favor of Lender or any assignee of Lender.
**"Security Instrument"** means the Deed of Trust/Mortgage/Security Deed, signed by Borrower in favor of Lender, securing payment of the Note.

AGREEMENT TO CORRECT OR PROVIDE ADDITIONAL DOCUMENTATION OR FEES: In consideration of the Loan Modification Agreement offered by Lender in the amount of $422,797.55 , which modifies the Note and Security Instrument, and regardless of the reason for any loss, misplacement, omission, misstatement or inaccuracy in any Loan documentation, Borrower agrees as follows: If any document is lost, misplaced, omitted, misstated or inaccurately reflects the true and correct terms and conditions of the Loan, upon request of Lender (including any assignee of Lender), Borrower will comply with Lender's request to execute, acknowledge, initial and/or deliver to Lender any documentation Lender deems necessary to replace and/or correct the lost, misplaced, omitted, misstated or inaccurate document(s). All documents Lender requests of Borrower shall be referred to as "Requested Documents." Borrower agrees to deliver the Requested Documents within ten (10) days after receipt by Borrower of a written request for such replacement. Borrower does hereby agree to comply with Lender's request to assure that the Loan documentation executed this date will enable Lender to seek insurance or guaranty from the Department of Housing and Urban Development (HUD) or Department of Veteran's Affairs (VA), if applicable, or to conform with and be acceptable to the Federal National Mortgage Association (FNMA), Federal Home Loan Mortgage Corporation (FHLMC), Government National Mortgage Association (GNMA), or any other investor.

**REQUEST BY LENDER:** Any request under this Agreement may be made by the Lender (including assignees and persons acting on behalf of the Lender) and shall be prima facie evidence of the necessity for same. A written statement addressed to Borrower at the address indicated in the Loan documentation shall be considered conclusive evidence of the necessity for Requested Documents.

**BORROWER LIABILITY:** If Borrower fails or refuses to execute, acknowledge, initial or deliver the Requested Documents to Lender within ten (10) days after being requested to do so by Lender, Borrower understands that Lender is relying on the representations contained herein and agrees to be liable for any and all loss or damage which Lender reasonably sustains thereby including, but not limited to, all reasonable attorneys' fees and costs incurred by Lender.

---

**CORRECTION AGREEMENT**         

This Agreement shall inure to the benefit of Lender's successors and assigns and be binding upon the heirs, devises, personal representatives, successors and assigns of Borrower.

## ACKNOWLEDGMENT OF RECEIPT

I hereby acknowledge receipt of this Correction Agreement and further acknowledge that I understand its provisions. Words used in this Correction Agreement mean and include the plural and vice versa.

_____    _____
Ralph M Porter, Jr          -Borrower (Date)    Elizabeth M Porter, signing     -Borrower (Date)
                                                solely to acknowledge this
                                                Agreement, but not to incur
                                                any personal liability for the
                                                debt

_____    _____
                            -Borrower (Date)                        -Borrower (Date)

_____    _____
                            -Borrower (Date)                        -Borrower (Date)

Loan No.: 0832004162

# ATTORNEY REPRESENTATION NOTICE

**RUTH RUHL, P.C.** The legal instruments involved in the above-referenced Loan have been prepared for the Lender by RUTH RUHL, P.C., Attorney-at-Law, using information supplied by Lender. The Borrower(s) acknowledges that RUTH RUHL, P.C. has acted only on behalf of the Lender. It has not assisted or rendered legal advice to the Borrower(s) with respect to the Loan or the Property securing it or the documents executed in connection with it. Borrower(s) may retain personal legal counsel for advice in this transaction.

**DESCRIPTION OF LEGAL SERVICES PERFORMED.** RUTH RUHL, P.C. may have prepared all or part of the following legal instruments affecting title to the Property including, but not limited to, a Deed (if required), Note, Security Instrument, Modification, Agreement, or Transfer of Lien (if required).

**DISCLAIMER OF REPRESENTATION OR WARRANTY.** Borrower(s) understands that RUTH RUHL, P.C. has not conducted a title search on the Property, and makes no representation or warranty about condition of the title, access to the Property or any other matters that might be revealed from an examination by Borrower(s) of a survey or the Property itself. If a purchase transaction, the Borrower(s) is cautioned to make sure the Deed to Borrowers conveys what the Borrower(s) has contracted to purchase.

**DATA SUPPLIED BY LENDER.** The disclosure calculations and fee data have been supplied by the Lender. No representation is made by RUTH RUHL, P.C. regarding the value of the Property, conformance with any limitations on fees, waiting periods, and any other matters outside the control of RUTH RUHL, P.C.

**BASIS FOR FEE.** The document preparation fee charged by RUTH RUHL, P.C. is based on a per transaction charge rather than an hourly fee. This fee is intended to provide fair compensation for the above-described services taking into consideration the time and labor required, the complexities of the questions involved, and the skill required to perform said services. Other considerations include the expertise of RUTH RUHL, P.C. in the complexities of the real estate practice, the necessary overhead associated with the rendering of the said services and the assumption of risk by RUTH RUHL, P.C. in the rendering of said services, There has been no charge made for any disclosures required by the Real Estate Settlement and Procedures Act and/or the Truth-in-Lending Act.

**The undersigned hereby acknowledges receiving and reading a copy of this Notice, and by his/her/its signature affirms his/her/its acknowledgment of the accuracy of the above statements.**

_____ (Borrower)
Ralph M Porter, Jr

_____ (Borrower)
Elizabeth M Porter, signing solely to
acknowledge this Agreement, but not to
incur any personal liability for the debt

_____ (Borrower)

_____ (Borrower)

01/026

THE MONEY SOURCE INC. (MYS)
PORTER, RALPH
2173 BALCONES DRIVE, CARROLLTON, TX 75010

CONVENTIONAL
Firm File Number: 22-038655

## NOTICE OF TRUSTEE'S SALE

WHEREAS, on July 31, 2017, RALPH M PORTER JR AND WIFE, ELIZABETH M PORTER, WITH HER JOINING HEREIN TO PERFECT THE SECURITY INTEREST BUT NOT TO OTHERWISE BE LIABLE, as Grantor(s), executed a Deed of Trust conveying to DONNIE B. PARK, as Trustee, the Real Estate hereinafter described, to FIRST BANK in payment of a debt therein described. The Deed of Trust was filed in the real property records of **DENTON COUNTY**, TX and is recorded under Clerk's File/Instrument Number 94481, to which reference is herein made for all purposes.

WHEREAS, default has occurred in the payment of said indebtedness, and the same is now wholly due, and the owner and holder has requested to sell said property to satisfy said indebtedness;

WHEREAS, the undersigned has been appointed Substitute Trustee in the place of said original Trustee, upon contingency and in the manner authorized by said Deed of Trust; and

NOW, THEREFORE, NOTICE IS HEREBY GIVEN that on , **Tuesday, January 3, 2023** between ten o'clock AM and four o'clock PM and beginning not earlier than 10:00 AM or not later than three hours thereafter, the Substitute Trustee will sell said Real Estate at the County Courthouse in **DENTON COUNTY**, TX to the highest bidder for cash. The sale will be conducted in the area of the Courthouse designated by the Commissioners Court, of said county, pursuant to Section §51.002 of the Texas Property Code as amended; if no area is designated by the Commissioners' Court, the sale will be conducted in the area immediately adjacent (next) to the location where this Notice of Trustee's Sale was posted.

Said Real Estate is described as follows: In the County of Denton, State of Texas:

BEING LOT 1, IN BLOCK A, OF AUSTIN HILLS, AN ADDITION TO THE CITY OF CARROLLTON, DENTON COUNTY, TEXAS, ACCORDING TO THE AMENDING PLAT THEREOF RECORDED IN CC# 2016-260, PLAT RECORDS OF DENTON COUNTY, TEXAS.

Property Address:     2173 BALCONES DRIVE
                      CARROLLTON, TX 75010
Mortgage Servicer:    THE MONEY SOURCE INC.
Mortgagee:            FIRST BANK
                      500 SOUTH BROAD STREET
                      SUITE #100A
                      MERIDEN, CT 06450

FILED FOR RECORD
22 NOV 29 PM 3: 27
COUNTY CLERK DENTON CO. TEX
BY _____ DEPUTY


EXHIBIT
D

The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the Servicing Agreement and Texas Property Code §51.0025, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the property securing the above referenced loan.

**THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER**

SUBSTITUTE TRUSTEE
Logan Thomas, Bob Dickerson, Phillip Pierceall, Aaron Parker, Douglas Rodgers, Terry Waters, Bruce Miller, Craig Muirhead, Clay Golden, Wendy Lambert, David Ray, Shawn Schiller, Cary Corenblum, Joshua Sanders, Matthew Hansen,
1 Mauchly
Irvine, CA 92618

WITNESS MY HAND this day November 22, 2022.

By: _____
H. Gray Burks IV
Texas Bar # 03418320
Ronny George
Texas Bar # 24123104
Grant Tabor
Texas Bar # 24027905
gburks@logs.com
rgeorge@logs.com
gtabor@logs.com
13105 Northwest Freeway, Suite 960
Houston, TX 77040
Telephone No: (713) 462-2565
Facsimile No: (847) 879-4823
Attorneys for First Bank

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active military service to the sender of this notice immediately.**

 Gmail

Diana Reyes <diana@jghfirm.com>

## Fwd: Loss Mitigation Application Confirmation
1 message

**Mike Porter** <mikeyp1070@gmail.com>                                        Wed, Dec 28, 2022 at 4:46 PM
To: Diana Reyes <diana@jghfirm.com>, Amanda Hill <amanda@jghfirm.com>, Anthony Flores <ajf@jghfirm.com>, Hannah Kube <hnk@jghfirm.com>, John Helstowski <jgh@jghfirm.com>

> And here is correspondence from my attempt last week (the one they summarily rejected due to timing only). I did get a letter and it is here somewhere in my mess. I'll get a pic/scan of it as quickly as I can.

---------- Forwarded message ---------
From: <noreply@firstbank.servicingdivision.com>
Date: Tue, Dec 20, 2022 at 1:28 PM
Subject: Loss Mitigation Application Confirmation
To: <mikeyp1070@gmail.com>

## 7⊼ First Bank

### We have received your Loss Mitigation Request

December 20, 2022

Loan #***4162

RALPH M PORTER JR

2173 BALCONES DR CARROLLTON



Please accept this electronic communication as confirmation that First Bank has received your request for loss mitigation assistance as of December 20, 2022. Through your use of our Loss Mitigation Eligibility Tool, we have received the information needed for our review.

**Next steps:**

- An underwriter will be reviewing your request for eligibility.
- Upon completion of the loss mitigation review, you will be notified in writing of the review outcome.
- If approved, you will be notified in writing of the program terms and conditions.

- Once this review is complete, your Customer Ally will contact you to go over the outcome of your review and provide any additional information.

*Please note: If we determine that more information is needed to properly evaluate you for available assistance, we will request additional information from you in writing. We will give you a reasonable amount of time to submit the required documentation. If the requested documentation is not provided timely, the evaluation process may take longer and you may not be approved for a loss mitigation option, and/or foreclosure protections could end. Once all documentation is provided a thorough review will be completed and a final outcome will be provided to you in writing.

If we are waiting on information from a third party, we will inform you of any possible delay. Please note that third party approval may be required for us to make a final evaluation. Any variances from agency requirements require prior approval from the agency insuring or guaranteeing your loan.

**Other important information:**
All requests for streamlined loss mitigation assistance received through our Loss Mitigation Eligibility Tool are considered incomplete applications, as the online tool bypasses our formal application process. Therefore, this loss mitigation review is being evaluated based upon an incomplete mortgage assistance application. Other loss mitigation options may be available to you. You have the option to submit a complete mortgage assistance application package to receive an evaluation for all available loss mitigation options. Mortgage assistance options and a mortgage assistance application may be found on our website at https://firstbank.servicingdivision.com/Help/MortgageHelp. If you wish to apply for additional assistance through a formal, non-streamlined mortgage assistance application package, you may submit a complete application at any time.

Please be advised that you should consider contacting servicers of any other mortgage loans secured by the same property to discuss available loss mitigation options.

**Important information regarding foreclosure protections:**
Referral to foreclosure will not occur while we are reviewing your loss mitigation request. Referral to foreclosure will also not occur if we extend an offer for an alternative to foreclosure and the deadline to respond has not expired. You may be entitled to additional protections under State and Federal law. Please note that if foreclosure proceedings have already been initiated, the foreclosure may continue.

If you have submitted your request 37 calendar days or less prior to a scheduled foreclosure sale, we will exercise our best efforts to conduct an expedited review of your request, and if eligible, may suspend the foreclosure sale. It is important to note that the offer for a workout option and/or the suspension of the foreclosure, in certain jurisdictions, is reliant on the court or public official charged with carrying out the activity who could fail or refuse to halt a scheduled sale. Therefore, the suspension is not

promised nor guaranteed, even if we request a delay or suspension of the foreclosure.

**Stay in touch:**
As a reminder, if you are not currently signed up, please create an online account at
https://firstbank.servicingdivision.com. You can make payments, view your loan
information, download loan documents, and more.

We are on a mission to inspire happy customers and are here to help! Should you have
any questions, please do not hesitate to contact our Customer Ally department toll-free
at (855) 673-3368 from 8 AM to 9 PM EST Monday through Friday and Saturday 8 AM to
12 PM EST.

Sincerely,

Customer Ally Department

Please do not reply to this message.

---

First Bank | 4110 Kell Boulevard. Wichita Falls. TX 76309 | (855) 673-3368
NMLS #583439 | www.nmlsconsumeraccess.org

 First Bank IS AN EQUAL HOUSING LENDER

Notice: This is a communication from a debt collector attempting to collect a debt. Any information obtained will be used for that purpose. We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

Credit Reporting Notice: Please note that we may report the delinquency status of your loan to credit reporting agencies as well as your entry into a Forbearance Plan in accordance with the requirements of the Fair Credit Reporting Act and the Consumer Data Industry Association requirements. CREDIT SCORING COMPANIES MAY CONSIDER THE ENTRY INTO A FORBEARANCE PLAN AS AN INCREASED CREDIT RISK. AS A RESULT, ENTERING INTO A FORBEARANCE PLAN MAY ADVERSELY AFFECT YOUR CREDIT SCORE, PARTICULARLY IF YOU ARE CURRENT ON YOUR MORTGAGE OR OTHERWISE HAVE A GOOD CREDIT SCORE.

Notice: If you are currently a debtor in a bankruptcy proceeding or have received a discharge in bankruptcy of any debt to this mortgage servicer and have not reaffirmed that debt pursuant to 11 U.S.C. Section 524(C), does not intend to enforce such debt against you and this communication is not an attempt to collect such debt against you personally. Please note, however, that the mortgage servicer reserves all rights to collect all amounts due to it from any collateral as to which it holds a mortgage or other security interest, and from any borrower who has not received a bankruptcy discharge.

Notice Regarding Military Service: IF YOU ARE CURRENTLY OR HAVE WITHIN THE LAST NINE (9) MONTHS BEEN IN THE MILITARY SERVICE PLEASE NOTIFY US IMMEDIATELY. YOU MAY BE ENTITLED TO RELIEF UNDER THE SERVICEMEMBERS CIVIL RELIEF ACT. YOU MAY ALSO CALL (800)342-9647 FOR FURTHER ASSISTANCE OR VISIT WWW.MILITARYONESOURCE.MIL . WHEN CONTACTING THIS OFFICE AS TO MILITARY SERVICE, YOU MUST PROVIDE US WITH POSITIVE PROOF AS TO YOUR MILITARY STATUS.

Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at https://legalassistance.law.af.mil/ .

Notice Regarding Military Service: If you are a service member, it is recommended that you obtain guidance from your employer regarding the impact that a pre-foreclosure sale or deed-in-lieu could have on your security clearance and

employment. Be advised that pre-foreclosure sales and deed-in-lieu transactions are generally reported to the Credit Alert Interactive Voice Response System (CAIVRS), which may result in your inability to obtain government financing or affect other government benefits for a certain period of time.

Notice Regarding Deed-in-Lieu of Foreclosure: Pursuant to Section 204 of the National Housing Act (12 U.S.C. 1710), for FHA-insured mortgages, your mortgage must be in Default on the date the Deed-in-Lieu special warranty deed is executed. Deed-in-Lieu transactions are generally reported to consumer reporting agencies, and will likely affect your ability to obtain another mortgage and other types of credit. If you are a servicemember, it is recommended that you obtain guidance from your employer regarding the Deed-in-Lieu impact on your security clearance and employment.

Notice Regarding Pre-Foreclosure Sale: Pursuant to Section 204(a)(1)(D) of the National Housing Act (12 U.S.C. 1710), for FHA-insured mortgages, your mortgage must be in Default on the date the pre-foreclosure sale transaction closes. Pre-Foreclosure Sale transactions are generally reported to consumer reporting agencies, and will likely affect your ability to obtain another mortgage and other types of credit. If you are a servicemember, it is recommended that you obtain guidance from your employer regarding the Pre-Foreclosure Sale's impact on your security clearance and employment.

Notice Regarding Assistance: Get Help Today! Experts from HUD-approved housing counseling agencies work in your best interest at no cost to you:

- For more information about available programs and guidance on your options, call (888) 995-HOPE (4673). Call 24 hours a day, 7 days a week, 365 days a year for help in more than 170 languages.
- For Borrowers who may need a Telecommunication Device for the Deaf (TDD) or Text Telephone (TTY), you can call the toll-free Federal Information Relay Service number at (800) 877-8339) more information about available programs and guidance on your options.
- For foreclosure prevention counseling, contact a HUD-approved housing counseling agency in a city near you by visiting www.hud.gov/findacounselor.
- For help completing and submitting an application for mortgage help, contact one of the agencies participating in the National Foreclosure Mitigation Counseling (NFMC) program.

Notice Regarding Account Errors and Information: You have certain rights under Federal law related to resolving account errors and requesting information about your account. If you think there is an error with your mortgage loan account or if you wish to request information about your mortgage loan, you must write to us at the following address:

ATTN: Customer Care Escalation
500 S Broad St. Suite 100A
Meriden, CT 06450

In your letter, please include the following information: Your full name, your account number, your mailing address and a brief description of the error you believe has occurred with your mortgage loan; or the account information you are requesting. Within five (5) days (excluding legal public holidays, Saturdays and Sundays), of receiving a written notice of error or a written request for information, we will provide a written acknowledgment of receipt of the notice of error or request for information. We will then review your correspondence and provide a response within thirty (30) days of receipt.

Notice Regarding Equal Credit: The Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. If you believe there has been discrimination in handling your application, you should contact:

Consumer Financial Protection Bureau
P.O. Box 2900
Clinton, IA 52733-2900

**CA Residents:** The Money Source Inc. is licensed by the California Department of Financial Protection and Innovation under (1) California Finance Lenders Law License #60DBO52992, and (2) California Residential Mortgage Lending Act License #4131177. The Money Source Inc. may be collecting a debt on its own behalf or on behalf of your mortgage servicer.

**CO Residents:** Your mortgage servicer maintains an in-state office as required by 4 Code of Colorado Regulations 903-1. Colorado office location: Stokes & Wolf, P.C. 1776 S Jackson St. #900, Denver, CO 80210. Phone: 303-753-0310.

**NC Residents:** The Money Source Inc. is licensed by the North Carolina Department of Insurance under North Carolina Collection Agency License #119506721. We are located at 3138 E. Elwood Street, Phoenix, AZ 85034. The Money

Source Inc. may be collecting a debt on its own behalf or on behalf of your mortgage servicer.

**OR Residents:** Borrowers: The Oregon Division of Financial Regulation (DFR) oversees residential mortgage loan servicers who are responsible for servicing residential mortgage loans in connection with real property located in Oregon and persons required to have a license to service residential mortgage loans in this state. If you have questions regarding your residential mortgage loan, contact your servicer at the phone number provided in this email. To file a complaint about unlawful conduct by an Oregon licensee or a person required to have an Oregon license, call DFR at 888-877-4894 or visit dfr.oregon.gov .

**TX Residents:** COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR. SUITE 201. AUSTIN, TX 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 877-276-5550. A complaint form and instructions may be downloaded and printed from the Department's website located at sml.texas.gov or obtained from the Department upon request by mail at the address above, by telephone at its toll-free consumer hotline listed above, or by email at smlinfo@sml.texas.gov.

The information contained in this message is proprietary and/or confidential. If you are not the intended recipient, please: (i) delete the message and all copies; (ii) do not disclose, distribute or use the message in any manner and (iii) notify the sender immediately. In addition, please be aware that any message addressed to our domain is subject to archiving and review by the persons other than the intended recipient.

# ⫷ First Bank

500 S. Broad Street
Suite 100A
Meriden, CT 06450

12/22/2022

RALPH M PORTER JR

2173 BALCONES DR

CARROLLTON TX 75010

Loan Number:        0832004162

Property Address:   2173 BALCONES DR

                    CARROLLTON TX 75010

Program Type:

(__x__) Streamline Modification  (__x__) Pre-Foreclosure Sale
(__x__) Modification             (__x__) Deed in Lieu
(__x__) Forbearance              (__x__) FEMA Forbearance



Dear Borrower(s),

We have received your request for Loss Mitigation Assistance and reviewed the documentation you
supplied in connection with this request. Your request for Loss Mitigation Assistance was carefully
considered, and we regret that we are unable to approve your application at this time, for the following
reason(s):

Due to the foreclosure sale date being less than 37 days away, we do not
have sufficient time to evaluate you for loss mitigation options.

The consumer reporting agency that may have provided information that influenced our decision in
whole or part was TransUnion LLC, 2 Baldwin Place PO Box 1000 Chester, PA 19022. TransUnion LLC can
be reached toll free at (800)888-4213. The reporting agency played no direct part in our decision and is
unable to supply specific reason why we have denied credit to you.